# No. 22-13312-A

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

v.

### NIDAL WAKED HATUM,

*Defendant/Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

## BRIEF OF THE APPELLANT NIDAL WAKED HATUM

TERRANCE REED, ESQ.
LANKFORD & REED, PLLC
120 N. St Asaph Street
Alexandria, Virginia 22314
Tel. (703) 299-5000

RICHARD C. KLUGH, ESQ.
RICHARD C. KLUGH, P.A.
40 N.W. 3rd Street, PH1
Miami, Florida 33128
Tel. (305) 536-1191

HOWARD SREBNICK, ESQ.
BLACK SREBNICK
201 S. Biscayne Blvd, Suite 1300
Miami, Florida 33131
Tel. (305) 371-6421

*Counsel for Appellant*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

**Nidal Waked Hatum v. United States, Case No. 22-13312-A**

Appellant Nidal Waked Hatum files this Certificate of Interested Persons

and Corporate Disclosure Statement, as required by 11th Cir. R. 26.1.

Alfonso, Marta

Beaton, Jr., Marcos

Black Srebnick

Calvete, Ricardo

Charest-Turken, Gabrielle Raemy

Cole, James

Erickson-Pogorzelski, Anthony

FTI Consulting

Global World Import & Export

Gonzalez, Juan Antonio

Greenspan, Juliana

Grosnoff, Nicole

Hatum, Nidal Ahmed Waked

Klugh, Richard C.

United States vs. Nidal Waked Hatum, Case No. 22-13312-A
Certificate of Interested Persons (cont'd)

Lankford & Reed, P.L.L.C.

Lopez, Andrea C.

Madison, George

Matzkin, Daniel

McAliley, Hon. Chris M.

Morrison Brown Argiz & Farra, LLC

Moscowitz, Jane Wollner

Moscowitz, Norman A.

Norkin, Walter M.

Noto, Kenneth

Ocean Bank (OCFC)

Osberg-Braun, Linda

O'Sullivan, Hon. John J.

Otazo-Reyes, Hon. Alicia M.

Perczek, Jackie

Rabin, Jr., Samuel J.

Reed, Terrance G.

**C2 of 3**

United States vs. Nidal Waked Hatum, Case No. 22-13312-A
Certificate of Interested Persons (cont'd)

Rosen, Adrienne

Rubio, Lisa Tobin

Scola, Jr., Hon. Robert N.

Sheehan, Evelyn

Sidley Austin LLP

Simonton, Hon. Andrea M.

Srebnick, Howard

Star Textile Manufacturing, Inc.

Sullivan, John

Tamen, Frank

Vida Panama, Z.L., S.A.

Zafir, Tamas

**C3 of 3**

## STATEMENT REGARDING ORAL ARGUMENT

The defendant respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision making process.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CITATIONS ......................................................................... vii

STATEMENT OF JURISDICTION........................................................................ix

STATEMENT OF THE ISSUES..............................................................................1

STATEMENT OF THE CASE.................................................................................3

    Course of Proceedings and Disposition in the District Court .........................3

    Statement of Facts...........................................................................................6

    Standards of Review ......................................................................................13

SUMMARY OF THE ARGUMENT ....................................................................14

ARGUMENT AND CITATIONS OF AUTHORITY ...........................................17

    I.      The District Court's Forfeiture Order Was Jurisdictionally
           Defective. ...........................................................................................17

    II.     The Forfeiture Order Should Be Reversed Where The District
           Court Duplicatively Counted Funds Involved In A Series Of
           Mirror-Image Exchanges, Improperly Applied Substitute Asset
           Forfeiture To Third-Party Property Temporarily Under The
           Control Of The Defendant, And Relied On Jurisdictionally-
           Defective Theories To Reach And Accumulate Monies At Issue
           In Uncharged Substantive Transactions...............................................20

III.    The Corporate Line of Credit Was Not Received by Defendant Nor Came to Rest with Him, and Hence Defendant Cannot Forfeit It .............................................................................28

IV.    The Forfeiture Money Judgment Violated The Excessive Fines Provision Of The Eighth Amendment In Light Of The Facts Presented On Remand For Resentencing ...........................................40

CONCLUSION ...................................................................................41

CERTIFICATE OF COMPLIANCE ........................................................43

CERTIFICATE OF SERVICE ...............................................................43

# TABLE OF CITATIONS

**Cases**#

*Honeycutt v. United States,*
   581 U.S. 443 (2017)...................................................................... 30, 32, 34

*Kousisis v. United States*,
   144 S. Ct. 2655 (2024)............................................................................. 27

*Libretti v. United States*,
   516 U.S. 29, 38-39 (1995) ...................................................................... 18

*McIntosh v. U.S.*,
   No. 22-7386, Jan. 10, 2024 .................................................................... 18

*McIntosh v. United States*,
   144 S. Ct. 980 (2024).............................................................................. 17

*McIntosh v. United States*,
   601 U.S. 330, 344 (2024)........................................................................ 20

*Russello v United States*,
   464 U.S. 16, 23 (1983)............................................................................ 34

*United States v. Bajakajian*,
   524 U.S. 321, 336 (1998)................................................................... 13, 41

*United States v. Bennett*,
   472 F.3d 825, 832 (11th Cir. 2006) .................................................. 12, 24

*United States v. Bornfield*,
   145 F.3d 1123, 1138 (10th Cir. 1998) ................................................... 35

*United States v. Browne*,
   5095 F.3d 1229, 1281 (11th Cir. 2007) ................................................. 41

*United States v. Carlyle*,
   712 Fed. Appx. 862, 864 (11th Cir. 2017).............................................. 42

*United States v. Castro*,
   455 F.3d 1249, 1251 (11th Cir. 2006) .................................................... 13

*United States v. Delgado*,
   2023 WL 7104063, *8 (11th Cir. 2023) ........................................................ 29, 30

*United States v. Deshazior,*
   882 F.3d 1352, 1354 (11th Cir. 2018) ........................................................ 13

*United States v. Elbeblawy*,
   899 F.3d 925, 933 (11th Cir. 2018) ........................................................ 13

*United States v. Flanders*,
   752 F.3d 1317, 1343 (11th Cir. 2014) ........................................................ 19

*United States v. Gilbert*,
   244 F.3d 888, 919 (11th Cir. 2001) ........................................................ 18

*United States v. Hawkey*,
   148 F.3d 920, 928 (8th Cir. 1998) ........................................................ 10

*United States v. Izurieta*,
   710 F.3d 1176 (11th Cir. 2013) ........................................................ 13

*United States v. Lee*,
   77 F.4th 565, 582 (7th Cir. 2023) ........................................................ 17

*United States v. Limbaugh*,
   2023 WL 119557, *5 (4th Cir. January 6, 2023) ........................................ 36

*United States v. Nejad,*
   933 F.3d 1162 (9th Cir. 2019) ........................................................ 37

*United States v. Monsanto*,
   491 U.S. 600, 610 (1989) ........................................................ 34

*United States v. Pease*,
   331 F.3d 809, 813 (11th Cir. 2003) ........................................................ 17

*United States v. Ramirez*,
   421 Fed. Appx. 950, 952 (11th Cir. 2011) ................................................ 40

*United States v. Robison*,
   505 F.3d 1208, 1226 n. 24 (11th Cir. 2007) ............................................ 13

*United States v. Seher*,
   562 F.3d 1344 (11th Cir. 2009) ........................................... 35

*United States v. Takhalov*,
   827 F.3d 1307 (11th Cir. 2016) ........................................... 28

*United States v. Tanner*,
   942 F.3d 60 (11th Cir. 2019) ............................................. 38

*United States v. Thompson*,
   990 F.3d 680 (9th Cir. 2021) ........................... 15, 30, 36, 37

*United States v. Villegas,*
   2024 WL 510310, *1 (9th Cir. Feb. 9, 2024) ...................... 36

*United States v. Waked Hatum*,
   969 F.3d 1156 (11th Cir. 2020) ........................... xi, 5, 10, 30

*United States v. Wilson*,
   884 F.2d 1355, 1356 (11th Cir. 1989) ................................ 25

*United States v. Wong Kim Bo*,
   472 F.2d 720, 722 (5th Cir. 1972) ...................................... 34

*United States v. Wynns*,
   2022 WL 683029, *5 (D.N.J. March 8, 2022) ..................... 36

*United States v. Young*,
   2024 WL 3493282 (11th Cir. July 22, 2024) ................. 29, 38

**Statutes**

U.S. Cost., amend. VIII ....................................... 5, 16, 40

18 U.S.C. § 1956 ......................................... 4, 6, 14, 24

18 U.S.C. § 1956(c)(7)(iii) ................................. vi, 1, 8

18 U.S.C. § 1956(h) ............................................ 3, 15

18 U.S.C. § 3231 .................................................. xi

18 U.S.C. § 981 ......................................................................................... 37

18 U.S.C. § 982 ......................................................................................... 33

18 U.S.C. § 982(a) ............................................................................... 21, 35

18 U.S.C. § 982(a)(1) ......................................................................... passim

18 U.S.C. § 982(b)(1) ............................................................................... 33

18 U.S.C. § 1956 .................................................................................... 3, 33

18 U.S.C. § 1957 ....................................................................................... 33

21 U.S.C. § 853 ...................................................................................... 33, 37

21 U.S.C. § 853(a) .................................................................................... 18

21 U.S.C. § 853(p) .............................................................................. passim

21 U.S.C. § 853(p)(1)(A)-(E) ................................................................. 20

21 U.S.C. § 853(p)(1)(B) ............................................................... 11, 12, 21

21 U.S.C. § 1352(a) ................................................................................. 33

28 U.S.C. 1291 ............................................................................................ xi

28 U.S.C. § 2072(b) ................................................................................ 39

## Other Authorities

2000 Adv. Cttee Notes Fed. R. Crim. P. 32.2 ......................................... 39

International Banking Act of 1978 ............................................................. 8

Anti-Drug Abuse Act of 1986 ................................................................... 33

Committee on Rules of Practice and Procedure, Minutes p. 12 (Jan. 8, 1999), 1999 WL 1702845

    at *10 .................................................................................................... 39

Comprehensive Drug Abuse Prevention and Control Act of 1970..................................33

Public Law No. 99-570, 100 Stat. 3207, October 27, 1986, Title I, §§ 1153(b)(2).....................33

The Rules Enabling Act ..................................................................................39

**Rules**#

Fed. R. App. P. 4(b) .....................................................................................18

Fed. R. Crim. P. 32.2 ....................................................................... 5, 18, 20, 40

Fed. R. Crim. P. 32.2(b)(4) ............................................................................18

Fed. R. Crim. P. 4(b)(2) ................................................................................19

Fed. R. Crim. P. 32.2(b)(2)(B) ........................................................................20

Fed. R. Crim. P. 32.2(b)(4) ............................................................................18

Fed. R. Crim. P. 32.2(b)(4)(B) ........................................................................18

## STATEMENT OF JURISDICTION

In 2020, this Court remanded this case to the district court to conduct forfeiture proceedings. *United States v. Waked Hatum* , 969 F.3d 1156 (11th Cir. 2020). The district court originally had jurisdiction over the criminal case under 18 U.S.C. § 3231 because the defendant was arrested and prosecuted for an offense against the laws of the United States and jurisdiction over the defendant because he was arrested and brought before the court by the Government. Upon remand, however, a forfeiture proceeding was conducted and a forfeiture order was entered by the district court on September 16, 2022. Waked filed a notice of appeal on September 29, 2022. No amended final sentencing judgment, however, was ever entered by the district court. To the extent that this Court concludes that the absence of any forfeiture provision in the existing judgment (DE:377) does not affect the finality and appealability of the order imposing a forfeiture money judgment following a remand by this Court, there would be jurisdiction for the appeal under 28 U.S.C. § 1291.

This Court has noted probable appellate jurisdiction (Doc. 20) following the filing of the parties' joint response (Doc. 17) to this Court's November 1, 2022, jurisdictional question as to whether a defendant may appeal from a final order of forfeiture as opposed to a criminal judgment imposing forfeiture. *See* Fed. R. Crim.

P. 32.2(b)(4)(C) ("Time to Appeal. The time for the defendant or the government to file an appeal from the forfeiture order, or from the court's failure to enter an order, *begins to run when judgment is entered*.") (emphasis added).

Although the parties have contended that jurisdiction must be deemed to exist so that the defendant can  challenge the district court's forfeiture order,[1] an issue remains as to whether: (a) the district court must comply with Rules 32 and 32.2 of the Federal Rules of Criminal Procedure and enter an amended sentencing judgment in order to effectuate the finality requirements for appeal;[2] and (b) the district court otherwise lacked jurisdiction to enter a final order of forfeiture where the judgment and commitment order, DE:377, does not include a forfeiture penalty.

---

[1] S*ee* Doc. 17 at 6 n. 1 ("[I]f Waked lacks standing to appeal, he would have no practical way to challenge the district court's forfeiture money judgment against him."),

[2] *See McIntosh v. United States* , 144 S. Ct. 980, 989 n. 5 (2024) (failing to reach question of whether entry of forfeiture order as part of the imposition of the criminal judgment is a jurisdictional prerequisite for enforcing forfeiture penalty under Fed. R. Crim. P. 32.2(b)(4)(B)) (citing *United States v. Lee*, 77 F.4th 565, 582 (7th Cir. 2023), for its explanation that Rule 32.2(b)(4)(B) "has the character of a claims-processing rule"); *see also* U.S. Brief (*McIntosh v. U.S*., No. 22-7386, Jan. 10, 2024), 2024 WL 144876, at *30 (Solicitor General concedes that "[r]ead as a whole, Rule 32.2 ... makes clear that the 'preliminary' order is designed to be subsumed by the order of forfeiture announced at sentencing and *made part of the judgment in accordance with Rule 32.2(b)(4)* ") (emphasis added).  *Accord, United States v. Pease*, 331 F.3d 809, 813 (11th Cir. 2003).

## STATEMENT OF THE ISSUES

I.    Whether imposition of a forfeiture money judgment should be vacated, where no amended judgment was imposed as part of a resentencing.

II.    Whether the district court erroneously imposed a $10,426,000 forfeiture money judgment where: (a) the district court treated defendant's use and repayment of a bank credit line on a recurrent basis, not as one total amount borrowed multiple times, but as different funds treated as distinct laundered amounts calculated cumulatively, mistakenly double-counting the funds involved in transactions with the same fungible money, such that the district court thereby vastly overstated the amount of funds actually involved in the charged laundering conspiracy; (b) the government failed to establish, and the stipulated facts did not support a finding of, any qualifying substantive fraud offense—and hence failed to show proceeds of "specified unlawful activity" within the meaning of the foreign jurisdiction requirement of 18 U.S.C. § 1956(c)(7)(iii)—where none of the no-loss, mirror-image transactions used to accumulate a forfeiture judgment amount satisfied the elements of relevant fraud statutes; and (c) the statutory methodology for substitute asset forfeiture was improperly applied to third-party property temporarily controlled by the defendant and properly returned to the owner pursuant to contractual agreement.

1

III.    Whether the district court erred in imposing forfeiture based upon laundered monies that were neither received by the defendant nor came to rest with him.

IV.    Whether the accumulation of amounts involved in recurrent transactions in the same fungible property in order to impose forfeiture of a total amount well beyond the actual back-and-forth exchange of property at issue violated the Eighth Amendment's excessive fines clause and exceeded the statutory fine limit.

## STATEMENT OF THE CASE

### Course of Proceedings and Disposition in the District Court

A federal grand jury in the Southern District of Florida returned a multiple-count indictment, DE:3, against appellant Nidal Ahmed Waked Hatum ("Waked"), along with codefendants Tamas Zafir, Star Textile Manufacturing, Inc. ("Star Textile"), and Vida Panama, Z.L., S.A. ("Vida Panama"). The indictment contained multiple money laundering conspiracy allegations under 18 U.S.C. §§ 1956 and 1957.  *See* 18 U.S.C. § 1956(h) (conspiracy to violate either § 1956(a) or § 1957 constitutes an offense).  For purposes of this appeal, however, and pursuant to Waked's plea agreement, DE:342, only Count 1's allegation of conspiracy to violate § 1957 is relevant: Waked was charged in that count with conspiring with the co-defendants, during the period from January 2000 until February 9, 2009, to violate § 1957 by knowingly engaging "in a monetary transaction in and affecting interstate and foreign commerce, by, through and to a financial institution, in criminally derived property of a value greater than $10,000, which was derived from specified unlawful activity," consisting of a violation of Panamanian law, specifically the commission of fraud on a bank in Panama.  DE:3:2. No Panamanian statute was referenced in the indictment, nor were the elements of any such statute identified in

3

the indictment or as part of the plea agreement, plea hearing, or any other filing in the case.

Waked entered his guilty plea on October 19, 2017. *See* DE:342:1 (plea agreement provides: "The United States abandons the remaining allegations in Count 1 as part of this plea agreement."; government also "agrees to seek dismissal of the remaining counts of the indictment"). The charges against the corporate co-defendants Vida Panama and Star Textile were dismissed pursuant to the plea agreement. *Id*. ¶ 2.

The indictment contained a forfeiture allegation under 18 U.S.C. § 982(a)(1), upon conviction of Waked of a violation of 18 U.S.C. § 1956. DE:3:6 (seeking forfeiture of property "involved in" a § 1956 offense). The plea agreement also contemplated forfeiture, but recognized that the calculation of any forfeiture amount was subject to further litigation including as to whether the relevant property had already been "recovered." DE:342:5.

At sentencing, upon the parties' request to "re-set the forfeiture portion [of sentencing] for between 60 and 90 days" thereafter, the district court did so, while incorporating general order of forfeiture at sentencing to maintain jurisdiction over the forfeiture issues. DE:358:14; *see also* DE:354. Following the conducting of that hearing, at which the defendant and his counsel were present and participated, the

4

district court denied the government's motion (DE:367) for forfeiture, and entered an amended criminal judgment imposing no order of forfeiture.  DE:377.  The district court sentenced Waked to 27 months imprisonment, which Waked has since served. *Id*.

On initial appeal by the Government, this Court reversed the district court's order denying the Government's motion for forfeiture and remanded for further proceedings, including determining the amount of forfeiture and whether the Eighth Amendment would be violated by its imposition. *United States v. Waked Hatum*, 969 F.3d 1156, 1169 (11th Cir. 2020). While the government's original appeal was pending, the government (through Immigration and Customs Enforcement) removed Waked from the jurisdiction of the district court, deporting him from United States. *See* DE:417.

On remand, the government filed a motion for preliminary order of forfeiture, the previous preliminary order having been vacated.  DE:410.  At a hearing on the government's motion for preliminary forfeiture order, the government explained the basis under Fed. R. Crim. P. 32.2 for the motion, including the need for its entry prior to the resentencing hearing as to Waked on remand.  DE:431:5 (government explains "sentencing can be done after the entry of preliminary order of forfeiture").

The district court entered a new *preliminary* order of forfeiture, which incorporated a forfeiture money judgment of $10,426,000.  DE:424.

On September 16, 2022, following the forfeiture hearing at which Waked's counsel argued his objections to the government's proposed forfeiture (DE:444), the district court entered a "Final Order of Forfeiture" consisting of a $10,426,000 forfeiture money judgment against Waked.  DE:445.  The district court did not vacate or modify the sole extant judgment and commitment order, DE:377, which includes no forfeiture penalty.  And the district court did not enter a new judgment and commitment order.

## Statement of Facts

The relevant facts are those established in the plea proceeding.  The agreed factual proffer for the plea did not include an estimation of any amount of money involved in the 18 U.S.C. § 1956 conspiracy offense, and the plea agreement specifically reserved all issues of determination of an amount of forfeiture.  The factual proffer set the period of conspiratorial activity as extending over an approximately 9-year period from 2000 to 2009.  In this period, co-defendant Vida Panama used a corporate line of credit with its Panamanian bank in order to finance repayments of this line of credit in "mirror image" transactions between co-defendants Vida Panama in Panama and Star Textile in Florida. Approximately $10

6

million in credit draws were made, with each being repaid with interest.[3]    Waked was a general manager of Vida Panama and a President of Star Textile, and participated in the credit line exchanges after making false representations as to the specific business purpose of the loans.    DE:343:2 (Waked "intentionally misrepresented the nature and purpose of these financial transactions [drawdowns] in order to induce ICBC [a Panamanian bank] to issue the loans and wire transfers. Had ICBC known of the falsehoods in the applications, it would not have approved the draws on [the] line of credit or the international wire transfers.").    Without stating how frequently this occurred, the proffer alleged that there were "multiple occasions" when Waked engaged in drawdowns, with the amounts varying from "$22,000 to $550,000." *Id*.

The conduct engaged in by Waked was not intended to, and did not, cause the bank any loss, nor was there any indication of any risk of loss or other adverse potential effect on the bank's financial interests.  The parties stipulated: "No bank incurred any financial losses from these transactions and all the draws from the banks were re-paid on time with interest."  *Id.*  In the plea colloquy with the district court, Waked confirmed that the purpose of the transactions was to use loan proceeds to

---

[3] The Presentence Investigative Report characterized Vida Panama as "a very large business" electronics dealer in Panama which "could be likened to the Best Buy chain in the United States." PSI, ¶ 20.

7

carry on (lawful) business activities when his companies had a cash shortfall, and that on each occasion, he fully repaid the loan with full interest.  DE:347:12-13.

The plea colloquy did not address the questions of "criminally-derived property" and "specified unlawful activity," nor of what statutory provision made the bank transactions unlawful under foreign law.  Nor did the plea colloquy address the elements of any such foreign bank fraud offense or how it might qualify under 18 U.S.C. § 1956(c)(7)(iii), as required for conviction.  Section 1956(c)(7)(iii) defines "specified unlawful activity," for purposes of "a financial transaction occurring in whole or in part in the United States" as "an offense against a foreign nation involving  ... fraud, or any scheme or attempt to defraud, by or against a foreign bank (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978)."  No explanation of any of the foreign fraud offense elements was provided at the plea hearing.  Instead, the district court advised Waked only that the charged specified unlawful activity was "fraud on a foreign bank."  DE:347:7.  The district court also confirmed with Waked "that the bank incurred no financial losses from the transactions."  DE:347:20.  At no point did the Government claim, or produce any evidence, that any of the corporate credit draws were paid to defendant Waked; instead, these corporate credit lines were exchanged and recycled between the corporate bank accounts of the dismissed corporate defendants.

8

Addressing the forfeiture provision in the plea agreement, the district court noted during the plea colloquy that if forfeiture was not agreed to by the parties "at the time of sentencing, ... that's going to be [a] dispute that I'll have to [resolve] later on." DE:347:10. Thereafter, at sentencing, the parties had not come to agreement, and they agreed that the forfeiture component of the sentencing proceeding would have to be resolved at a hearing approximately 90 days after sentencing. DE:358:14.

When the district court thereafter addressed forfeiture component of sentencing at a hearing on April 6, 2018, the court denied forfeiture based on "the unique circumstances of this case, where Mr. Waked returned all of the money plus interest." DE:378:24; *see* DE:375:1 (district court explains its decision not to impose forfeiture because the statute's purposes, "to ensure that criminals do not retain money for themselves and to punish defendants by transferring ill-gotten gains to the United States," would not be served in this case). In response to Waked's Eighth Amendment challenge, the district court found that the government's requested sum of $20,852,000 would be unconstitutionally excessive. DE:375:2 n.1. The district court further noted that if it were required to impose a forfeiture money judgment, it would order a judgment for "$520,000 ($10,000 for each of the 52 transactions)." *Id.*

After denial, DE:382, of the government's motion, DE:379, for reconsideration of the district court's amended judgment, DE:377, which contained no forfeiture penalty, the government appealed from the amended judgment and the orders denying forfeiture and denying reconsideration. *See* DE:384. This Court reversed the district court's order, DE:375, denying the government's forfeiture motion, without reaching an independent determination of any forfeiture amount and thus without vacating the existing criminal judgment. *United Stat es v. Waked Hatum*, 969 F.3d 1156, 1169 (11th Cir. 2020) ("Although we reverse the District Court's denial of the government's motion for forfeiture, we do not set the amount of the forfeiture required.").

In the prior government appeal, this Court reaffirmed the use of forfeiture money judgments unless and until instructed otherwise by the Supreme Court, concluding that the Supreme Court in "*Honeycutt* held only that a district court may not hold members of a conspiracy jointly and severally liable for property that one conspirator, but not the other, acquired from the crime." *Waked Hatum*, 969 F.3d at 1163. In rejecting the forfeiture reasoning employed by the district court, this Court concluded that:

(1)    "[e]ven if … laundered funds voluntarily returned to the victim are not always subject to forfeiture, *see United States v. Ha wkey*, 148 F.3d 920, 928 (8th Cir. 1998), that is not what happened in [defendant's]'s case. [Waked] does not argue that he 'returned' the

10

fraudulently obtained funds to the Bank out of the goodness of his heart. His laundering scheme depended on the Bank being repaid in full at the conclusion of each *mirror-image transaction*." [*Id*. at 1164];

(2)     "[a]llowing [Waked] to escape forfeiture on the ground that the interest in the laundered funds was actually Vida Panama's, not his own, would relieve him of culpability for the offense to which he already pled guilty." [*Id.* at 1165];

(3)     the Supreme Court's holding in *Honeycutt* "was based on the language of § 853(a), which limits forfeiture to 'proceeds the person obtained directly or indirectly' as the result of the crime. By contrast, the government is seeking forfeiture against [Waked] under 18 U.S.C. § 982(a)(1). And because § 982(a)(1) contains neither a 'proceeds' nor an 'obtained' limitation, *Honeycutt*'s 'tainted property' requirement does not apply to this case." [*Id*. at 1165];

(4)     returning the tainted property to the victim bank—"the original and still-current owner of the laundered money"—before sentencing could constitute a "third party" transfer within the meaning of the substitute forfeiture statute, 21 U.S.C. § 853(p)(1)(B) [*Id*. at 1166]; and

(5)     "[u]nless and until Congress, the Supreme Court, or this Court sitting *en banc* changes the law of forfeiture, we will follow this Court's precedent permitting forfeiture money judgments." [*Id*. at 1164.]

This Court also concluded that the district court erred in holding that "*any* forfeiture order above $520,000 would be unconstitutionally excessive," but remanded the sentencing issues to the district court for fact-finding. *Waked Hatum*, 969 F.3d at 1167.  We sought certiorari.  However, the petition was denied, with the Solicitor General noting that immediate review was unnecessary because this case is in an interlocutory posture. Brief of United States in Opposition, No. 20-1370 (July 2, 2021) at 9.

11

On remand, based on the government's reduced forfeiture request limited to the original credit draws (*i.e.,* not including their reciprocal repayments), DE:410, the district court imposed a forfeiture money judgment of $10,426,000 as the amount "involved in" the money laundering conspiracy.  DE:424:2.  The district court did not amend the criminal judgment and, as explained below, failed to comply with the sentencing requirements of Fed. R. Crim. P. 32 and 32.2 and proceeded without obtaining personal jurisdiction over the defendant.  The district court took no evidence on the issue of the "involved in" amount for forfeiture, relying instead on a comment by the probation officer in the presentence report as to the "involved in" figure.  DE:424:2 (citing *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006)).

In the remand proceedings, there was no government claim or court finding seeking substitute asset forfeiture pursuant to 21 U.S.C. § 853(p).   That is, on remand the Government did not claim that the corporate transfers repaying the corporate bank loan constituted a prohibited "third party" transfer subject to substitute forfeiture under 21 U.S.C. § 853(p)(1)(B), as this Court suggested may apply. *See Waked Hatum*, 969 F.3d at 1166.  Accordingly, the only alleged legal basis for forfeiture is direct forfeiture under 18 U.S.C. § 982(a)(1).  This appeal follows.

## Standards of Review

A constitutional error in imposing sentence is reviewed *de novo*.  *See United States v. Deshazior,* 882 F.3d 1352, 1354 (11th Cir. 2018) (citing cases). Issues of statutory interpretation are reviewed *de novo*, *see United States v. Castro*, 455 F.3d 1249, 1251 (11th Cir. 2006), as are due process claims, *see*, *e.g.*, *United States v. Robison*, 505 F.3d 1208, 1226 n. 24 (11th Cir. 2007), and jurisdictional issues. *See United States v. Izurieta* , 710 F.3d 1176 (11th Cir. 2013) (whether an indictment properly invokes the jurisdiction of the district court is a question of law). This Court reviews *de novo* the district court's legal conclusions regarding forfeiture, including interpretation of forfeiture statutes and related constitutional provisions. *United States v. Elbeblawy*, 899 F.3d 925, 933 (11th Cir. 2018); *United States v. Bajakajian*, 524 U.S. 321, 336 (1998).

13

## SUMMARY OF THE ARGUMENT

1.     The district court jurisdictionally erred in failing to enter a new criminal judgment on the basis of resentencing, including so as to ensure that the defendant could exercise plenary rights of appeal from the criminal conviction and sentence.

2.     The district court erred in determining the amount of funds actually laundered as part of the conspiracy offense, by adopting the calculation methodology advocated by the government that treated repeated transactions in the same fungible property (credit line draws) cumulatively, resulting in an involved-in amount unreasonably multiplied by the number of times non-loss, re-paid transactions occurred.  The district court lacked jurisdiction to impose forfeiture penalties where the record failed to show substantive violations of 18 U.S.C. § 1956 (the relevant conspiratorial object), in that the relevant statutes do not encompass the underlying conduct alleged, and the requisites for finding "criminally-derived property" and "specified unlawful activity" pertaining to foreign crimes.  Ultimately, the district court lacked a sufficient statutory basis for imposition of the forfeiture money judgment, even under a substitute asset theory, where direct forfeiture of the funds involved was available to the government, which chose instead to bypass such direct forfeiture rather than simply complying with victim reimbursement processes.

3.    The Government failed to properly assert any claim of substitute asset forfeiture, thus leaving direct forfeiture liability as the only legal basis for forfeiture. Under direct forfeiture liability, tainted property is forfeitable only if it is received by, or "comes to rest" with the defendant. *United States v. Thompson,* 990 F.3d 680, 690 (9th Cir. 2021). Here, the recycled corporate lines of credit came to rest with the corresponding corporations, and were never received by the defendant. Pursuant to the plea bargain, the alleged corporate co-defendant co-conspirators were dismissed from the case, and hence they are not subject to any criminal forfeiture. Because there was no claim or evidence that any forfeitable assets came to rest with co-defendant, co-conspirator Waked Hatum, there cannot be any forfeiture imposed upon him.

4.    The defendant was convicted of one count only, a conspiracy charge that carries, under 18 U.S.C. § 1956(h), a maximum fine of $250,000. The imposition of a $10,426,000 forfeiture punishment based on the novel theory that repeated transactions in the same property warrant a fictional gross loss figure wholly untethered to any lending exposure faced by the fraud victim and converts the forfeiture penalty into a fine, rather than a disgorgement of gain. Because the maximum fine was exceeded in this case, without indictment or jury trial right extended to the defendant, the imposition of the forfeiture penalty violated the Fifth

and Sixth Amendments.   The forfeiture penalty also violated the Eighth Amendment's excessive fines clause in that a forfeiture penalty wholly untethered to any gross profit by the defendant, even if it were technically permissible under the forfeiture statutes, is so unusual and disproportionate to any actual harm—and so contrary to public policy, including in that it greatly magnifies punishment for those who repay loans—that the constitution bars such an excessive penalty.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.    THE    DISTRICT    COURT'S    FORFEITURE    ORDER    WAS JURISDICTIONALLY DEFECTIVE.

Jurisdictional or claims processing rule error by the district court—in imposing a forfeiture order in contravention of the sentencing judgment where a forfeiture order cannot be entered or effective against a defendant unless it is entered in a sentencing decision and *judgment*—compels vacating the forfeiture order in this case.

This Court has held that the plain language of Rule 32(d)(2) requires that, to have any legal effect, a forfeiture order must be included in the final judgment. *United States v. Pease*, 331 F.3d 809, 813 (11th Cir. 2003).  This position is also consistent with the Solicitor General's position recently articulated to the Supreme Court's decision in *McIntosh v. United States*, 144 S. Ct. 980 (2024).  Accordingly, this Court should conclude that the imposition of a forfeiture order at odds with the sentencing judgment itself is contrary to governing law and must be vacated.  *See id*. at 989 n. 5 (noting, without resolving, question of whether entry of forfeiture order as part of the imposition of the criminal judgment is a jurisdictional prerequisite for enforcing forfeiture penalty under Fed. R. Crim. P. 32.2(b)(4)(B)) (citing *United States v. Lee*, 77 F.4th 565, 582 (7th Cir. 2023), for its explanation that Rule 32.2(b)(4)(B) "has the character of a claims-processing rule"); *see also*

17

U.S. Brief (*McIntosh v. U.S.*, No. 22-7386, Jan. 10, 2024), 2024 WL 144876, at *30 (Solicitor General concedes that "[r]ead as a whole, Rule 32.2 ... makes clear that the 'preliminary' order is designed to be subsumed by the order of forfeiture *announced at sentencing* and *made part of the judgment in accordance with Rule 32.2(b)(4)*") (emphasis added).

Forfeiture is a sentencing penalty that must be determined at sentencing, and as such it must be part of the sentencing judgment. *Libretti v. United States*, 516 U.S. 29, 38-39 (1995) ("Forfeiture is an element of the sentence imposed"); *United States v. Gilbert*, 244 F.3d 888, 919 (11th Cir. 2001) (citing *Libretti*). "The United States cannot acquire a convicted defendant's interest in property forfeited under 21 U.S.C. § 853(a) unless and until the district court orders the interest forfeited as part of its judgment in the defendant's case." *Pease*, 331 F.3d at 813. The forfeiture order cannot become final as to the defendant unless it is incorporated into the sentencing judgment. *See* Fed. R. Crim. P. 32.2(b)(4).

This Court has decided to carry with the case the issue of whether it has jurisdiction to hear the appeal in the absence of a criminal judgment imposing forfeiture. Fed. R. App. P. 4(b) provides that appeals from orders anticipatory to entry of a final sentencing judgment do not vest until the judgment is entered. *See* Fed. R. Crim. P. 4(b)(2) ("Filing Before Entry of Judgment. A notice of appeal filed

after the court announces a decision, sentence, or order–but before the entry of the judgment or order–is treated as filed on the date of and after the entry.").

Assuming there is such jurisdiction for this appeal, the forfeiture order itself is still of no effect and should be vacated, because of its inconsistency with the only existing final judgment and sentence order, DE:377. The issue is not one of mere formality, but instead implicates due process rights. Until such time as a sentencing judgment imposes forfeiture, the defendant cannot be fully aware of, and have a full opportunity to address, the entirety of the judgment.

Because the forfeiture order in this case contravenes the judgment and sentence order, the Court should vacate the forfeiture order and remand the case to the district court for further proceedings. *United States v. Flanders*, 752 F.3d 1317, 1343 (11th Cir. 2014) ("The preliminary order of forfeiture becomes final as to the defendant at sentencing, during which the court *must* include the forfeiture when pronouncing sentence and the forfeiture order in the judgment. [Fed. R. Crim. P.] 32.2(b)(4)(A) and (B). The time for the defendant to file an appeal from a forfeiture order *runs from the entry of the judgment*. [Fed. R. Crim. P.] 32.2(b)(4)(C).").[4]

---

[4] The Supreme Court has made it clear that the mode of proceeding in this case, to postpone forfeiture issues until after the sentencing hearing, is a violation of Rule 32.2, that in itself is reviewable for harmlessness, so long as due process and the purposes of the Rule are otherwise satisfied. *McIntosh v. United States*, 601 U.S. 330, 344 (2024) ("Noncompliance with [Fed. R. Crim. P.] 32.2(b)(2)(B)'s timing requirement is a procedural error subject to harmlessness review.").

II.    **THE FORFEITURE ORDER SHOULD BE REVERSED WHERE THE DISTRICT COURT DUPLICATIVELY COUNTED FUNDS INVOLVED IN A SERIES OF MIRROR-IMAGE EXCHANGES, IMPROPERLY APPLIED SUBSTITUTE ASSET FORFEITURE TO THIRD-PARTY PROPERTY TEMPORARILY UNDER THE CONTROL OF THE DEFENDANT, AND RELIED ON JURISDICTIONALLY-DEFECTIVE THEORIES TO REACH AND ACCUMULATE MONIES AT ISSUE IN UNCHARGED SUBSTANTIVE TRANSACTIONS.**

On remand, the Government failed to assert reliance upon substitute asset forfeiture as required under 21 U.S.C. § 853(p) to justify forfeiture of Defendant's property,[5] and the district court accordingly did not make any finding that Waked improperly transferred or dissipated any forfeitable assets to satisfy any of the statutory preconditions of substitute asset forfeiture under 21 U.S.C. § 853(p)(1)(A)-(E).  Accordingly, the option suggested by this Court's prior panel opinion, to resort to 21 U.S.C. § 853(p)(1)(B) to justify a forfeiture of Waked Hatum's legitimate (untainted) property is no longer available.  Waked nonetheless maintains in this appeal (including for purposes of en banc or certiorari review) his appellate argument, preserved and addressed in the prior government appeal, that in the case of an allegation of transactions in fraud proceeds, the return of the funds to the

---

[5]  Technically, the Government never made a substitute asset forfeiture claim in the trial court.  The Indictment does not cite 21 U.S.C. § 853(p) or make an affirmative claim of substitute asset forfeiture.  The Government did not invoke substitute assets forfeiture in the district court prior to its appeal of the original judgment.  It first invoked substitute asset forfeiture in its prior appeal to this Court, but then abandoned any such claim on remand to the district court.

alleged victim prior to any involvement by law enforcement is a disposition distinct from those set forth under 21 U.S.C. § 853(p) as property dissipations.   Waked thus maintains his contention that the substitute asset forfeiture methodology is not properly applied to third-party property returned by the defendant to its rightful owner in due course per contractual agreement.

The statute, § 853(p) authorizes only the "forfeiture of *any other* property of the defendant," thereby distinguishing substitute forfeiture of "other" legitimate assets from forfeiture of directly forfeitable assets.   The Government's abandonment of § 853(p) in this thus case limits the available forfeiture authority to directly forfeitable assets under 18 U.S.C. § 982(a), that is, to "property, real or personal, involved in such offense, or any property traceable to such property."   *Id*.   By statutory definition, therefore, defendant Waked's legitimate property cannot be directly forfeit unless it was "involved in" the money laundering offense. No such evidence was claimed or established.

On remand, the district court's calculation of the amount involved in the laundering conspiracy was still overstated by duplicatively (over)counting transactions in the same credit line property, rather than following the stipulated facts and theory of the indictment that this was a series of "mirrored" back-and-forth transactions of the same essentially fungible funds, and by utilizing uncharged

conduct outside the jurisdictional scope of the relevant criminal laws to expand forfeiture punishment.

### A.    Duplicative counting of the credit draws on a single revolving line of credit.

The district court erroneously accounted for the amount involved in the conspiracy to engage in monetary transactions between Waked and ICBC (the Panamanian Bank at which the corporate co-conspirators had a revolving credit line). The repeated borrowing and return of a sum of money is a conspiracy to launder that sum of money multiple times, but it does not make the sum laundered any greater, no matter how many times it is laundered, whether in repetitive transactions or a series of financial transactions. Thus, the "involved in" amount of money that is actually laundered through multiple transactions is one fungible amount, even though as the series of transactions occurs, e.g., through banks, the actual dollars involved might not be the same or might not even be in dollar currency in all iterations of laundering.

The same result applies here, where the *credit line* was the subject of the asserted fraud and the amount borrowed and returned cannot functionally be distinguished from any other borrowing and return of the same property. The district court duplicatively counted defendant's recurrent employment of a repaid bank credit line as non-fungible distinct laundered amounts, mistakenly ignoring that the

transactions involved repeated utilization of the same fungible property, and thereby vastly overstated the actual amount of funds involved in the charged laundering conspiracy. Thus, the substitute asset forfeiture methodology was improperly applied to third-party property temporarily (albeit repeatedly) under the control of the defendant and was overstated in light of recurrent non-cumulative transactions.

The defendant's borrowing from, and returning to, the bank essentially the same money on many occasions did not multiply the gross proceeds of the offense anymore than would be true where the same physical item is taken and returned many times. No matter how many times a defendant's conspiracy contemplates stealing and returning the same property, the *proceeds* are calculated rationally as the singular property that was stolen—whether it was stolen one time or twenty times. The alternative approach by the government, that pretends that the bank was put at risk as to $10,426,000 in proceeds, should be rejected.

The district court's miscalculation derived in part from erroneously premising forfeiture on an inapplicable relevant conduct analysis offered in a presentence report that did not address forfeiture. The forfeiture provision on which the government relied in the indictment and at resentencing extends only to "any property, real or personal, involved in [the] offense [of conviction], or any property traceable to such property." 18 U.S.C. § 982(a)(1). Thus, forfeiture orders are

23

subject to an offense-of-conviction limitation and may not include mere relevant conduct as that term is used in the federal sentencing guidelines.

Section 982(a)(1) reaches offenses under 18 U.S.C. § 1956. Waked was not charged with or convicted of any § 1956 or § 1957 transactions. But he was convicted, under § 1956(h), of conspiring "to knowingly engage in *a monetary transaction* in and affecting interstate and foreign commerce, by, through and to a financial institution, in criminally derived property of a value greater than $10,000, which was derived from specified unlawful activity." DE:3:2 (emphasis added).

The district court, relying on *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006)—a sentencing case having no connection with the procedural rights applicable to contested forfeitures—mistakenly concluded that the amount of money involved in the offense of conviction was $10,426,000, because that figure was mentioned in the presentence investigation report and echoed in government forfeiture filings. DE:445:2. The government's motion for forfeiture, DE:410:2, also suffered from misplaced reliance on the inapposite *Bennett* decision, which relates to facts applicable to criminal history and recidivist enhancements. 472 F.3d at 832 (citing *United States v . Wilson* , 884 F.2d 1355, 1356 (11th Cir. 1989) (addressing calculation of relevant conduct under sentencing guidelines)).

Waked's presentence investigation report—which addressed relevant conduct for purposes of guideline offense level calculation and not the offense-specific analysis of the forfeiture statute—did not include any forfeiture calculations or purport to offer any conclusions as to the scope of forfeiture in this case. Nor has counsel found any precedent for treating a presentence report, which governs matters covered under Fed. R. Crim. P. 32, as also governing forfeiture objections or rights under Fed. R. Crim. P. 32.2. Imposing such a requirement would instead run counter to the terms of the plea agreement which preemptively recognized that forfeiture issues were disputed, as was confirmed at sentencing, where the government announced, "I think it would serve all of us if we can work [forfeiture] out, but if we can't, then there will just have to be a hearing on it." DE:358:14–15.

**B.** **The premise for accumulating non-loss-based transactions to reach an elevated forfeiture amount was jurisdictionally defective.**

The monetary transactions that the district court cumulatively calculated, based on the different focus of the PSI, to accumulate a multi-million-dollar forfeiture judgment amount rested on individual banking transactions that did not satisfy the specified unlawful activity predicate and, thus, over which there was no basis for federal criminal jurisdiction. The indictment sought forfeiture for proceeds of the conspiracy to engage in monetary transactions involving proceeds of fraud on a foreign bank in violation of Panamanian criminal law. The factual basis for the

25

conspiracy offense did not stipulate to any proceeds of any completed fraud offenses, and instead stated that there was no loss of any kind—and instead a gain to the banks—from particular banking transactions that were actually conducted. Notably, the Panamanian authorities found no fraud violation at all, much less a loss to the bank.

Consequently, the factual basis was not only insufficient to establish fraud— under either U.S. or Panamanian law—it was insufficient to establish that mirror-image transactions with the bank produced any gross proceeds at all, much less net proceeds. By skipping over the proceeds determination, and by labeling as fraud proceeds credit line transactions that simply profited the bank, the district court unreasonably extrapolated from the factual basis for the conspiracy offense to a mistaken premise of completed fraud offenses over which federal jurisdiction might exist.

The government failed to ever allege what law of Panama was violated, nor did the government allege any U.S. fraud law was breached. The Supreme Court will resolve this term the overarching question of whether transactions induced by deception, but lacking any object of inflicting economic harm qualify for prosecution under federal fraud statutes. *See Kousisis v. United States*, 144 S. Ct. 2655 (2024) (granting petition for writ of certiorari, including to resolve circuit split on: "Whether

26

deception to induce a commercial exchange can constitute mail or wire fraud, even if inflicting economic harm on the alleged victim was not the object of the scheme.").

Under any traditional understanding of fraud or fraud proceeds, there must be an intent to deprive the victim of some economic interest or value. That did not occur in the substantive transactions at issue that were used to reach the $10,426,000 forfeiture amount. The district court assumed that because credit line transactions had occurred, there were fraud proceeds. But the explicit and implicit allegations of the indictment and, more specifically, the stipulated factual basis show that fraud gains or losses played no part in the substantive transactions at issue—no matter what may have been the objective of any conspiratorial activity to which Waked entered a guilty plea.

This Court has found that a *jurisdictional defect* as to the subject matter at issue in a criminal prosecution bars punishment. Waked did not plead guilty to committing any substantive fraud offenses. The stipulated facts show that any deceit relating to the transactions did not go to the value of the deals. *See United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016). Imposing enhanced forfeiture penalties without any showing that Panamanian law would encompass such conduct as fraud, much less that U.S. law would be consistent with Panamanian law, compels that this Court reverse the forfeiture decision as premised on a jurisdictionally-defective

27

premise of proceeds of specified unlawful activity as to the uncharged substantive transactions

### III.    THE CORPORATE LINE OF CREDIT WAS NOT RECEIVED BY DEFENDANT NOR CAME TO REST WITH HIM, AND HENCE DEFENDANT CANNOT FORFEIT IT.

The only money involved in the alleged money laundering conspiracy was funds transferred under a bank corporate line of credit by alleged corporate co-conspirator co-defendants involving corporate bank accounts which was immediately repaid to the bank using the same monies.  All claims against the corporate co-conspirators were dismissed.  The originating bank was not financially harmed; it actually made its contractual interest as per its agreement with the corporate borrowers.    It is undisputed that Defendant Waked did not personally receive or acquire the corporate funds, *i.e.*, they were not transferred to him or to any personal bank account of his.  DE:454:23-24 (defense counsel, at September 16, 2022 sentencing hearing: "it was the company, not Mr. Waked, individually, who received the fund:" "So the company—if anybody quote, 'obtained it,' it was the company, and then immediately returned it to the bank.").  Defendant never received any of these forfeitable, laundered assets.  Absent an allegation or proof that the defendant received the forfeitable assets, he cannot be ordered to forfeit them. *United States v. Young* , 2024 WL 3493282 (11th Cir. July 22, 2024) (defendant

cannot forfeit property he did not receive); *United States v. Delgado,* 2023 WL 7104063, *8 (11th Cir. Oct. 27, 2023) (reversing as plain error forfeiture judgment entered "without finding that Delgado personally received proceeds in that amount," noting that government "concedes" this is plain error). Furthermore, any tainted funds (*i.e.*, the corpus of the laundered monies) were received solely by the dismissed co-defendants, Vida Panama and Star Textile, and were located temporarily in their corporate bank accounts. The dismissal of the alleged corporate co-conspirators by the prosecution ended their potential legal liability in criminal forfeiture for monies they received—there is no judgment as to them.

In addition, none of these corporate monies were paid to, or came to rest with, the defendant, and hence his legitimate assets cannot be ordered forfeit.[6]

. *See, e.g., United States v. Thompson,* 990 F.3d 680, 690 (9th Cir. 2021); *United States v. Limbaugh*, 2023 WL 119557, *5 (4th Cir. January 6, 2023). Under these circumstances, forfeiture cannot be imposed upon a defendant who never owned the corporate monies at issue.

---

[6] Sentencing Tr. at 24 ("Under the 9th Circuit case, for sure, I think it is the case called Thompson, forfeiture is determined by how much is retained by the defendant under bank fraud, under the other provision of forfeiture. But, I think it is important to note, in terms of the scale of harm, that Mr. Waked did not obtain any of the funds.").

29

For example, in *Honeycutt v. United States,* 581 U.S. 443 (2017), the Supreme Court unambiguously held that there is no (i) conspiracy or (ii) joint and several liability for criminal forfeitures—they are personal liabilities of the individual defendant. *Id.* at 453. This Court previously acknowledged that *Honeycutt* held "that a district court may not hold members of a conspiracy jointly and severally liable for property that one conspirator, but not the other, acquired from the crime." W*aked Hatum*, 969 F.3d at 1163. *Accord, United States v. Delgado*, 2023 WL 7104063, *8 (11th Cir. 2023) ("Under binding Supreme Court precedent, then, a lower-level conspirator's forfeiture liability is limited to property he 'actually acquired as the result of the' criminal conspiracy.'") (quoting *Honeycutt*, 581 U.S. at 454).

But that is all the Government alleges here—that the corporate co-conspirators obtained the possession, use, and enjoyment of corporate credit line, and it declined or failed to claim or prove that Waked acquired any credit line property. Credit line monies received by the corporate co-conspirators would have been forfeitable from them, but they were dismissed. Holding defendant liable for monies only the dismissed defendants received would constitute prohibited conspiracy forfeiture liability or joint and several forfeiture liability.

30

*Honeycutt* involved two brothers who were convicted as co-defendants and co-conspirators in selling illicit precursor drugs from a hardware store owned by one of them at which the other was employed as a manager. The Supreme Court rejected forfeiture liability of the defendant employee brother for the drug profits received by his co-conspirator owner brother because he never acquired them. *Id*. at 448, 451. This conclusion was driven by the traditional limitation of forfeitures (both civil and criminal) to tainted property—*i.e., only* the actual property that violates the law is subject to forfeiture. *Id*. at 453. The Supreme Court analogized the case to a marijuana farmer hiring a college student to sell marijuana on campus, and concluded that the student would only be liable for the salary he made from the individual sales, not the farmer's profits. *Honeycutt* confirmed that attributed liability doctrines, such as conspiracy liability or joint and several liability, simply have no place in forfeiture tradition or in the resulting statutory forfeiture authorizations derived from this historical tradition.

*Honeycutt* pinpointed the critical textual and structural statutory justification for this holding in the substitute asset forfeiture provisions of 21 U.S.C. § 853(p) which the Supreme Court deemed the solitary and exclusive departure authorized by Congress from the historical limitation of forfeitures to directly tainted property. *Honeycutt*, 581 U.S. at 451 ("The sole provision of § 853 that permits the

31

Government to confiscate property untainted by the crime.").[7]

The fact that Congress selected this singular, separate, structural path to forfeit legitimate property demonstrated to the *Honeycutt* Court that the Government can confiscate untainted "assets *only* from the defendant who acquired the property and who bears responsibility for its dissipation in accordance with the statutory criteria. *Id.* at 452.

 Congress has enacted this solitary statutory path to the forfeiture of legitimate property as an integral part of the very forfeiture statute at issue in this case—18 U.S.C. § 982(a)(1)--by its express incorporation language of  § 853(p)'s language into 18 U.S.C. § 982(b)(1): "The forfeiture of property under this section . . . shall be governed by the provisions of section 413 (other than subsection (d) of that section) (of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. § 853)").

This statutory incorporation assumes special meaning here because all three statutory provisions applicable to this case--the money laundering offense and its forfeiture penalty in 18 U.S.C. § 982(a)(1), and the substitute asset forfeiture penalty--were simultaneously enacted in the same Act, the Anti-Drug Abuse Act of

---

[7] "Congress provided just one way for the Government to recoup substitute property when the tainted property itself is unavailable—the procedures outlined in § 853(p)." *Honeycutt,* 581 U.S. at 453.

1986.  *See* Public Law No. 99-570, 100 Stat. 3207, October 27, 1986, Title I, §§ 1153(b)(2) ("Substitute Assets") (adding 21 U.S.C. § 853(p)); § 1352(a) ("New Offense for Laundering of Monetary Instruments") (adding 18 U.S.C. §§ 1956 & 1957), §1366(a) ("Forfeiture") (adding 18 U.S.C. § 982).

Because all three of these statutes (the money laundering offense, the associated money laundering forfeiture authority, and substitute asset forfeiture), were simultaneously enacted in the same Act, the *Honeycutt* opinion's express interpretation of the adoption of one of these, 21 U.S.C. § 853(p), in the same Act constitutes a Congressional reaffirmation of the longstanding limitations of taint doctrine in criminal and civil forfeitures is a conclusion applicable equally to all three statutes.[8]  Similarly, the *Honeycutt* opinion's admonition not to render § 853(p)'s statutory language futile by permitting its circumvention using common law attributed liability doctrines such as conspiracy liability, 581 U.S. at 451, is particularly compelling when a single Act is the identified means chosen by a single Congress to express and implement this intent.  *See, e.g.*, *United States v. Monsanto*, 491 U.S. 600, 610 (1989) (refusing to recognize attorney fee forfeiture exemption in

---

[8] "By adopting an *in personam* aspect to criminal forfeiture, and providing for substitute-asset forfeiture, Congress made it easier for the Government to hold the defendant who acquired the tainted property responsible. *Congress did not, however, enact any "signi ficant expansi on of the sc ope of property subject to   forfeiture*.'" *Honeycutt*, 581 U.S. at 454 (quoting S.Rep. No. 98–225, p. 192 (1983)) (emphasis added).

Comprehensive Forfeiture Act of 1984 because Congress created limited exemptions for specific types of forfeitures in same Act). Further, the statutory construction principle that motivated the Supreme Court in Honeycutt to disavow joint and several or conspiracy forfeiture liability—because doing so would render the substitute assets provision futile—is especially compelling here because Congress enacted this solitary exception in the same Act. *See Russello v United States*, 464 U.S. 16, 23 (1983) (construing RICO forfeiture statute under canon that "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally in the disparate inclusion or exclusion.'") (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972))

Here, invoking the same solitary statutory path to the forfeiture of untainted assets (§ 853(p)) was theoretically available to the Government, but upon remand it chose not to proceed under § 853(p). Thus, the only forfeiture statutory authority available is that applicable to directly tainted property under 18 U.S.C. § 982(a).

Having abandoned substitute asset forfeiture, the Government had no legally available path to forfeiture other than direct forfeiture—*i.e.*, showing a statutorily proscribed connection between the defendant's property and the offense. But the property at issue—recycled lines of corporate credit—was neither received by the

34

defendant nor obtained by him.  For example, the money is not alleged to have traveled through the defendant's bank accounts.  Thus, this case is like the "involved in" money laundering case of *United States v. Seher*, 562 F.3d 1344 (11th Cir. 2009), in which this Court vacated a forfeiture judgment imposed upon jewelry company co-conspirator's inventory and bank account for lack of proof that its own bank account was used in the money laundering  *Id.* at 1370. While there was sufficient evidence that the individual defendant (Seher) and another related jewelry company's (Midtown) assets and bank accounts were used to launder drug proceeds for jewelry, the government had failed to adduce records that any bank account of co-defendant jewelry store Chaplin's was used to commit the offense. The *Seher* opinion vacated the forfeiture for lack of evidence connecting defendant Chaplin's corporate bank accounts to the alleged money laundering conspiracy, and did so by citing and relying upon the holding in *United States v. Bornfield* , 145 F.3d 1123, 1138 (10th Cir. 1998) where the Tenth Circuit vacated a forfeiture jury verdict of a defendant's business bank account when the laundered monies went to his personal bank account. *Id*. at 1370.  Here, there was no evidence or claim that the defendant's personal bank accounts or his assets were involved in the corporate money laundering of the dismissed corporate co-defendants.  Thus, the only way to hold defendant liable in forfeiture would be an attribution of forfeiture liability from his

co-defendants such as conspiracy or joint and several liability, but *Honeycutt* holds that this is not authorized by Congress.

In *United States v. Thompson*, 990 F.3d 680 (9th Cir. 2021), the Ninth Circuit examined the impact of *Honeycutt* on whether a co-conspirator could be held liable in criminal forfeiture for property acquired by his co-conspirator. *Thompson* involved three conspirators who fraudulently offered lines of credit to victims to defraud them into advancing a fee to obtain the loan. The advances went into attorney trust accounts, and then were distributed and pocketed by the co-conspirators without making the loans. The district court entered a money judgment against each defendant in the amount of the total traceable loan proceeds. The Ninth Circuit reversed, concluding that the money judgments impermissibly imposed joint and several liability upon alleged co-conspirators, contrary to *Honeycutt*. *Accord United States v. Limbaugh*, 2023 WL 119577, *5 (4th Cir. Jan. 6, 2023) (remanding for determination "based on the portion of the conspiracy proceeds that actually 'came to rest' with Limbaugh herself"); *United States v. Villegas,* 2024 WL 510310, *1 (9th Cir. Feb. 9, 2024); *United States v. Wynns* , 2022 WL 683029, *5 (D.N.J. March 8, 2022).

The *Thompson* opinion acknowledged that the operative forfeiture statute (18 U.S.C. § 981) did not expressly limit forfeitable property to that "obtained" by a

36

defendant (as was the case with 21 U.S.C. § 853(a) in *Honeycutt*), but this did not permit a departure from *Honeycutt*'s prohibition on attributed forfeiture liability. Instead, the statutory text, structure, and history of forfeiture limits forfeitures to tainted properties that "come to rest" with an individual defendant. 990 F.3d at 690. Because the lines of credit fraud proceeds traveled through attorney trust accounts and other accounts, the individual defendants could only forfeit those traceable monies which "came to rest" with them. *Id*. at 691. Of course, as Congress and the Supreme Court authorized, a defendant could suffer forfeiture for dissipating forfeitable assets that come to rest with a defendant.

Significantly, the Ninth Circuit also held that a personal money judgment could not be used as a means to impose such a joint and several liability. *Thompson*, 990 F.3d at 691 (citing *United States v. Nejad*, 933 F.3d 1162 (9th Cir. 2019)). *See id.* at 692 (ordering district court to "make findings denoting approximately how much of the proceeds of the crime came to rest with each of the three conspirators). In other words, a money judgment is not a permissible means of imposing joint forfeiture liability.

Here, a personal forfeiture money judgment was entered against defendant Waked in the full amount of the corporate line of credit, even though none of it came to rest with him at any time, thereby imposing joint and several liability upon him

37

for the monies that exclusively came to rest with the dismissed corporate co-conspirators Vida Panama and Star Textile, which they then returned to the originating bank.  None came to rest with Waked Hatum, and the Government abandoned any claim on remand for forfeiture of his legitimate assets under the sole avenue for doing so, § 853(p).

This Court recently re-addressed the impact of *Honeycutt* on co-conspirator forfeiture liability in *United States v. Young*, 2024 WL 3493282 (11th Cir. July 22, 2024).  *Young* involved a defendant who received the proceeds of a health care fraud conspiracy in her own personal bank account, and then distributed a portion of these proceeds to her co-conspirators.    The trial court "ordered forfeiture of the total amount deposited into her account."  *Id*. at * 6.  Defendant claimed that *Honeycutt* barred forfeiture of the proceeds that she forwarded to her co-conspirators.  The *Young* opinion opted to follow the Second Circuit's lead, rather than the Ninth Circuit's in T*hompson*, by holding that *Honeycutt*'s "'bar against joint and several forfeiture for co-conspirators applies only to co-conspirators who never possessed the tainted proceeds of their crimes.'"  *Young*, at *17 (quoting *United States v. Tanner*,  942 F.3d 60, 67–68 (2d Cir. 2019).  While this narrow construction is a misreading of *Honeycutt*, it is sufficient to require reversal here, because the Government never claimed, or attempted to prove, that Defendant Waked ever

38

personally received any of the monies from the corporate credit line with the bank. *Accord Delgado*, 2023 WL 7104063, *8 (plain error to forfeit monies not received by defendant in health care fraud).

Further, as *Thompson* held, the use of a money judgment to expand forfeiture to untainted property is not statutorily authorized.  Nor it is formally authorized by the Advisory Committee that coined the term in Rule 32.2 of the Federal Criminal Rules of Procedure.  *See, e.g.*, 2000 Adv. Cttee Notes Fed. R. Crim. P. 32.2 ("A number of cases have approved use of money judgment forfeitures: The Committee takes no position on the correctness of those rulings.").[9]   In fact, the only statutory reference to  a forfeiture "money judgment" is in 31 U.S.C. 5332(b)(4) (border cash smuggling) which is not invoked in this case and would otherwise not apply even if it did because it limits forfeiture money judgments to forcing a defendant to replace substitute assets judgments that have proven to be uncollectable.   The use of non-statutory "money judgments" to defeat express statutory limitations on forfeitures is simply defiance of the laws created by Congress.

---

[9] In any event, the Rules Committee lacks authority to expand the scope of forfeitures. The Rules Enabling Act states that the Federal Rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Thus, a court rule cannot empower a court to punish a defendant in a manner unauthorized by statute. *See also*  Committee on Rules of Practice and Procedure, Minutes p. 12 (Jan. 8, 1999), 1999 WL 1702845 at *10 (statement by the Chair of the Advisory Committee on Criminal Rules that Rule 32.2 was "only attempting to provide appropriate procedures to follow in those circuits where money judgments are authorized").

**IV.  THE FORFEITURE MONEY JUDGMENT VIOLATED THE EXCESSIVE FINES PROVISION OF THE EIGHTH AMENDMENT IN LIGHT OF THE FACTS PRESENTED ON REMAND FOR RESENTENCING.**

The district court's ruling discounting the conviction-based nature of forfeiture effectively converted forfeiture into an impermissible fine, contrary to statutory limitations. This was especially prejudicial here, because the trial court found that defendant Waked was unable to pay a fine.   DE:358:31.   The accumulation of amounts involved in recurrent transactions in the same fungible property in order to impose forfeiture of a total amount well beyond the actual back-and-forth exchange of property at issue violated the Eighth Amendment's excessive fines clause and exceeded the statutory fine limit.

The Eighth Amendment prohibits criminal forfeitures which are grossly disproportionate to the gravity of the offense. *United States v. Bajakajian*, 524 U.S. 321, 337 (1998).  This Court has construed the *Bajakajian* opinion as providing a three-factor analysis that a court may consider in determining whether a proposed forfeiture violates the Eighth Amendment: "(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant." *United States v. Browne*, 5095 F.3d 1229, 1281 (11th Cir. 2007) (citing *Bajakajian*, 524 U.S. at 337-40). *See also United States v. Carlyle*,

712 Fed. Appx. 862, 864 (11th Cir. 2017) (citing *Bajakajian*, describing four-part test). These are not the exclusive factors a court may consider.

In *United States v. Ramirez*, 421 Fed. Appx. 950, 952 (11th Cir. 2011), this Court upheld a district court's forfeiture ruling that took into consideration what would constitute an excessive forfeiture under *Bajakaian*. In *Ramirez*, the district court rejected a government demand for forfeiture of $967,100, reflecting the amount of funds involved in the defendant's 103 currency structuring offenses, as constitutionally excessive. Instead, the district court imposed a forfeiture of $1,000 for each offense. Absent a similarly measured approach in this case, the forfeiture bore no relationship to the underlying criminal law concerns and significantly exceeded the harm at issue given the actual fungible amount involved and the complete absence of any loss.

## CONCLUSION

For reasons stated by Waked in the prior appeal, there is no statutory authority for any money judgment. For the reasons stated in this appeal, the Court should vacate the forfeiture order entered in this case or, alternatively, dismiss the appeal for lack of jurisdiction.

Respectfully submitted,

RICHARD C. KLUGH, P.A.                    BLACK SREBNICK
40 N.W. 3rd Street, PH1                    201 South Biscayne Boulevard, Suite 1300
Miami, FL 33128                            Miami, FL 33131
Tel. (305) 536-1191                        Tel. (305) 371-6421
Email: RKlugh@kughlaw.com                  Email: HSrebnick@RoyBlack.com

By: /s/ Richard C. Klugh                   By: /s/Howard Srebnick
    RICHARD C. KLUGH, ESQ.              HOWARD SREBNICK, ESQ.
    Counsel for Appellant               Counsel for Appellant

LANKFORD & REED, PLLC
120 N. St Asaph Street
Alexandria, Virginia 22314
Tel. (703) 299-5000

By: /s/ Terrance Reed
    TERRANCE REED, ESQ.
    Counsel for Appellant

**CERTIFICATE OF COMPLIANCE**

I CERTIFY that this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7). According to the WordPerfect program on which it is written, the numbered pages of this brief contain 9,012 words.

/s/   Howard Srebnick
HOWARD SREBNICK, ESQ.


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was electronically filed on this  9th day of September, 2024, and served on that date by ECF filing upon all counsel of record.

/s/   Howard Srebnick
HOWARD SREBNICK, ESQ.